UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KILEY CLINTON, | ) |
| Petitioner, | ) |
| vs. | ) No. 1:17-cv-00545-SEB-TAB |
| KEITH BUTTS Superintendent, | ) |
| Respondent. | ) |

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Kiley Clinton for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. NCF 16-11-0170. For the reasons explained in this Entry, Clinton's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## B. The Disciplinary Proceeding

On November 21, 2016, Internal Affairs ("IA") Officer Williams issued a Report of Conduct charging Clinton with a violation of Code A-111/113. The Report of Conduct states:

> On the above date and approximate time, Internal Affairs was reviewing telephone calls placed to 765-343-4773. Clinton made several calls to 765-343-4773 on 9/6/16. During the course of the calls on 9/6/16, Clinton can be heard talking to a female. The female says she is at the Speedway gas station meeting "Blue Eyes". "Blue Eyes" then gets on the phone with Clinton and Clinton says he is dealing with a dummy. The female later tells Clinton that she did not get what she went for but was given something else and would have to go back later for the other. In an interview with Clinton, on 9/14/16, Clinton admitted he was speaking with a correctional officer on the telephone and he sent her to get Suboxone, however, "Blue Eyes" brought her heroin. Clinton said he never received the heroin from the officer and is not sure as to where it went. Clinton was advised of conduct report.

Clinton was notified of the charge on November 21, 2016, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing (Screening Report). The Screening Officer noted that Clinton did not request any witnesses but did request a copy of the IA interview, which was denied as confidential.

The Hearing Officer conducted a disciplinary hearing on November 28, 2016. The Hearing Officer noted that Clinton stated, "I was not trafficking with anybody, I didn't ask anybody for an[yt]hing." The Hearing Officer then determined that Clinton had violated Code A-111/113 based on the Conduct Report, evidence, and the offender statement. The sanctions imposed included commissary and phone restrictions, the deprivation of 180 days of earned credit time, and the demotion from credit class I to II.

Clinton filed an appeal to the Facility Head on December 1, 2016. The appeal was denied on December 7, 2016. Clinton then appealed to the Final Review Authority, who denied the appeal on December 19, 2016.

C.  **Analysis**

Clinton challenges the disciplinary action against him arguing that there was no physical evidence to support the charge, that he was denied exculpatory evidence, denied the right to remain silent, and that the hearing officer failed to explain how he found him guilty.

1. *Sufficiency of the Evidence*

Clinton first contends that the evidence was insufficient to support the disciplinary conviction. Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Clinton was convicted of attempted trafficking in violation of Codes A-113 and A-111 of the Adult Disciplinary Process. An offender violates Code A-113 by "[e]ngaging in trafficking (as defined in IC 35-44.1-3-5) with anyone who is not an offender residing in the same facility." An offender violates Code A-111 by "[a]ttempting or conspiring or aiding and abetting with another to commit any Class A offense." During the IA investigation in this case, it was determined that Clinton made several calls to 765-343-4773 (a number on his phone list) during which he and a female discussed her meeting "Blue Eyes" and her picking up something from

him. In another call the same day, the female states that "Blue Eyes" gave her something "deadly" and Clinton responds that it was supposed to be "little orange things." When interviewed by IA, Clinton admitted speaking to a correctional officer on the telephone and sending her to get suboxone. Instead of obtaining suboxone, "Blue Eyes" gave the officer heroin. These facts were corroborated by other sources during the investigation. This evidence, including Clinton's admission that he spoke to a correctional officer and sent her to obtain suboxone, was sufficient to allow the hearing officer to conclude that Clinton was guilty of attempting to work with another person who is not an inmate to bring suboxone into the facility, in other words, attempting to traffic.

2. *Denial of Evidence*

Clinton also argues that the Screening Officer failed to provide him with exculpatory evidence. Clinton requested his interview with IA. This evidence was provided to the Hearing Officer, but was not provided to Clinton because it was confidential. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence]

is exculpatory." *Johnson v. Brown*, 381 Fed. Appx. 494, 497 (7th Cir. 2017) (quoting *Piggie*, 344 F.3d at 679).

Here, the respondent argues that the IA interview was denied because the evidence was properly withheld based on security concerns. The respondent provided the IA investigation report *ex parte* and the Court has reviewed it. There is no exculpatory evidence in that report or the interview. Further, to the extent that Clinton claims that he was denied evidence in the form of his own interview with IA, he should be aware of the contents of that interview because he participated in it. Because there is nothing exculpatory in the interview, Clinton's due process rights were not violated when it was withheld from him.

### 3. *Right to Remain Silent*

Clinton also argues that his right to remain silent was violated when the IA officer interviewed him about the charges. Clinton also states that this violated DOC policy and that the IA Officer's report of Clinton's statement was false.

First, Clinton's argument is understood to be an argument that the IA Officer violated his Fifth Amendment right to remain silent – in other words, that he was forced to answer questions about the charges against his will. But he has not asserted that this is what happened. He does not state that he wanted to remain silent, but was not permitted to do so. In fact, he asserted that he stated in the IA interview that he did not commit trafficking. In any event, the United States Supreme Court has held that an inmate's silence may be used against him in prison disciplinary proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308 (1976); *see also Kitchen v. O'Leary*, No. 84 C 7633, 1985 WL 2219, at *4 (N.D. Ill. July 11, 1985).

Next, to the extent that Clinton also argues that the denial of his right to remain silent violated DOC policy, a violation of prison policy does not rise to the level of a due process

violation. *See Keller v. Donahue*, 271 Fed. Appx. 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 Fed. Appx. 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas review.").

Finally, Clinton also argues that the IA Officer's statement that Clinton admitted to sending the correctional officer to get suboxone was false and that this statement therefore violated his right against self-incrimination. But this argument is really a request that the Court reweigh the evidence. As discussed above, the Court cannot reweigh the evidence and determine credibility, but must affirm the disciplinary conviction if there is any evidence in the record that would support it. Clinton therefore has not shown that he is entitled to relief on his claim that the IA Officer stated that Clinton admitted to the charges against him.

      4. *Written Explanation*

Clinton also argues that the hearing officer failed to provide him with an adequate written basis for the decision. "Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* But "[o]rdinarily a mere conclusion that the prisoner is guilty will not satisfy this

requirement." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987). The purpose of this requirement is to allow "a reviewing court . . . [to] determine whether the evidence before the committee was adequate to support its findings concerning the nature and gravity of the prisoner's misconduct." *Id.*

The written statement of decision by the hearing officer states that he considered the staff report, Clinton's statement, the IA investigation, and the recorded phone calls. Filing No. 14-4. Although the written statement of decision was brief, it was sufficient to comport with due process. When a case is "particularly straightforward," the hearing officer need "only to set forth the evidentiary basis and reasoning for the decision." *Jemison v. Knight*, 244 Fed. Appx. 39, 42 (7th Cir. 2007); *see Scruggs*, 485 F.3d at 941; *Saenz*, 811 F.2d at 1174. Here, the hearing officer's decision was straightforward. He either could believe Clinton's denial of involvement in the attempted trafficking, or credit the investigation report and other evidence that detailed his involvement. Given that the hearing officer found him guilty, he clearly chose the latter. Therefore, the hearing officer's simple statement regarding the evidence on which he relied in making his decision is sufficient. *See Jemison*, 244 Fed. Appx. at 42 (holding that the hearing officer's statement "that it relied on staff reports and [the inmate's] own statement at the hearing" was sufficient because the hearing officer "had only to weigh [the officer's] statement against [the inmate's]"); *see also Saenz*, 811 F.2d at 1174; *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987). Accordingly, an adequate written statement was provided, and Clinton is not entitled to habeas relief on this claim.

  **D.**  **Conclusion**

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the

charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Clinton to the relief he seeks. Accordingly, Mr. Clinton's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _____1/30/2018_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KILEY CLINTON
#116975
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Marjorie H. Lawyer-Smith
INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov